IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

VINCENT SCHNEIDER,

        Plaintiff,

v.                                              CIVIL ACTION NO.  3:20-0206

DODSON BROTHERS
EXTERMINATING CO., INC.,

        Defendant.

**MEMORANDUM OPINION**

On February 26, 2021, the Court entered an order denying Plaintiff's and Defendant's cross motions for summary judgment. ECF No 42. This opinion follows.

**I.  BACKGROUND**

Plaintiff Vincent Schneider was hired by Dodson Brothers Exterminating Company ("Dodson Brothers") in September of 2018 to work as a sales inspector. Pl.'s Mot. & Mem. of Law ("Pl.'s Mem.") 2, ECF No. 25; Def.'s Mem. of Law. in Supp. ("Def.'s Mem.") 1, ECF No. 27. In February of 2020, he was transferred from sales to the position of "route technician." Pl.'s Mem. 4; Def.'s Mem. 1. Schneider's direct supervisor at Dodson Brothers was District Manager Larry Balderson. Pl.'s Mem. 3; Def.'s Mem. 2. At the beginning of his employment with Dodson Brothers, Balderson and Regional Sales Manager Mike Savilla frequently "rode along" with Schneider to show him the ropes. Def.'s Mem. 2; Schneider Dep. 221.[1] The parties agree that

---

[1] The parties, however, dispute how long these ride-alongs lasted. Defendant avers that Balderson and Savilla rode with Schneider for the first couple months, Def.'s Mem. 2, whereas Schneider testified he was riding alone by October, Schneider Dep. 221.

Balderson's supervisory feedback was mostly verbal, and that no formal written warnings or performance evaluations were given to Schneider. Schneider Dep. 242; Balderson Dep. 31.

Over the next year, Schneider's sales rarely met the individual sales goals set for him by Dodson Brothers. Def.'s Mem. 5; Schneider Dep. 64–67; Sales Data, ECF No. 26-3. However, the other sale technicians in the area also frequently failed to meet their goals. Def.'s Mem. 4; Pl.'s Resp. 2, ECF No. 29; Sales Data 2.

Notwithstanding his unmet goals, by the end of his first full year working for Dodson Brothers, Schneider had sold enough to be awarded the company's "Pacesetter's" award. Def.'s Mem. 5; Award Letter, ECF No. 24-5.[2] On January 11, 2021, Schneider received the award at a ceremony in Lynchburg, Virginia. Balderson Decl. ¶ 23, ECF No. 26-3.

After the ceremony, Schneider took a vacation with his wife. *Id.;* Schneider Dep. 74. The circumstances surrounding Schneider's vacation, however, are disputed. Balderson testified that Schneider first informed Balderson he was taking a vacation at the award ceremony in Lynchburg. Balderson Dep. 80–81. Balderson stated that he was "incredibly frustrated" by Schneider's last-minute request. Balderson Decl. ¶ 23–24; Balderson Dep. 81. In contrast, Schneider testified that he called Balderson and requested the time off in advance of the award ceremony. Schneider Dep. 74. Moreover, Schneider claimed that Balderson was understanding of the request and even told him that "it shouldn't be a problem" for him to take the time off. Schneider Dep. 74–75. Although the circumstances surrounding the vacation are disputed, it is agreed that Balderson arranged for another employee to cover for Schneider. Balderson Decl. ¶ 23; Schneider Dep. 74–75.

---

[2] The Pacesetter's award is given to sales inspectors who achieve $ 250,000 in sales during their first year. Def.'s Resp. 4, ECF No. 30. Dodson Brothers suggests that Schneider only qualified for the award because during the first three months of his employment Balderson and Savilla rode with him, and thus boosted his sales. *See id*.

After his vacation, Schneider returned to work on January 17, 2020. Schneider Dep. 79. On January 19, 2020, Schneider's wife informed Balderson that Schneider was ill. Balderson Decl. ¶ 26; Text Messages, ECF No. 26-3 at 66. On January 21, 2020, Schneider was admitted to the hospital. Schneider Dep. 85; Med. Recs. 1, ECF No. 25-6. During this time, Schneider was diagnosed with type 1 diabetes and diabetic ketoacidosis. Med. Recs. 1. Balderson approved time off for Schneider's stay at the hospital. Leave Approval, ECF No. 25-7. After his hospital stay, Schneider returned to work at Dodson Brothers on Monday, January 27, 2020. Balderson Dep. 46.

Two days later, Balderson transferred Schneider from his position as sales inspector to the route technician position. Balderson Decl. ¶ 28. The transfer resulted in a pay cut. Schneider Dep. 54; Balderson Dep. 88 (agreeing that route technicians generally make less money than sales inspectors). According to Schneider, Balderson told Schneider he was being transferred because Balderson was angry Schneider took the last-minute vacation in January. Schneider Dep. 95–96. Balderson testified that when Schneider asked why he was being transferred, Balderson "exclaimed to him that the fact he took a last-minute vacation was the final straw." Balderson Decl. ¶ 28. Balderson's declaration states that his "decision to transfer Schneider was based on his performance—not his disability or use of medical leave." *Id.* at ¶ 31.

After his transfer, Schneider filed a two-count Complaint in the Circuit Court of Cabell County, West Virginia, asserting claims for disability discrimination under the West Virginia Human Rights Act and "outrage." Compl., ECF No. 1-1 Dodson Brothers removed the action to this Court on March 20, 2020. Notice of Removal, ECF No. 1. On April 29, 2020, this Court entered an order dismissing Count Two of the Complaint, finding that Schneider had failed to state a claim for outrage. ECF No. 10.

After engaging in discovery, both parties have filed motions for summary judgment as to liability on Count One. Dodson Brothers also moved for summary judgment as to Schneider's claim for punitive or liquidated damages. On February 23, 2021, the Court held a pre-trial conference at which the parties argued their respective motions.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

**A. Disability Discrimination Under the West Virginia Human Rights Act**

When West Virginia's legislature enacted the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1 *et seq.* (1979), it declared that "[i]t is the public policy of the

State of West Virginia to provide all of its citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property." W. Va. Code § 5-11-2. The WVHRA prohibits employment discrimination on the basis of race, religion, color, national origin, ancestry, sex, age, blindness, disability, and familial status. W. Va. Code § 5-11-9(1); W. Va. Code § 5-11-3(h).

West Virginia courts analyze WVHRA claims using the Title-VII burden-shifting framework set out by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 902 (1973). *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 159–60 (W. Va. 1995). Under this framework, a plaintiff asserting a claim of employment discrimination has the burden of producing "an inference of discrimination by establishing a *prima facie* case." *Id.* at 160. If a *prima facie* case is established, the burden of production then shifts to the defendant "to proffer a legitimate, nondiscriminatory reason for the challenged employment action." *Id.* Finally, the plaintiff is given the opportunity to show that the proffered nondiscriminatory reason is pretextual. *Id.*

> A *prima facie* case is made by showing:
>
> (1) That the plaintiff is a member of a protected class.
> (2) That the employer made an adverse decision concerning the plaintiff.
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

*Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 429 (W. Va. 1986). Much ink has been spilled over the "but for" element, both in West Virginia case law and in the memoranda submitted in this case. The West Virginia Supreme Court of Appeals, however, has already clarified that "[u]se the 'but for' language in that test may have been unfortunate, at least if it connotes that a plaintiff must establish anything more than an inference of discrimination to make out a *prima*

*facie* case." *Barefoot*, 457 S.E.2d at 161. The plaintiff simply must "show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Id.* (quoting *Conaway*, 358 S.E.2d at 429–30).

Accordingly, to state a prima facie case of disability discrimination under the WVHRA, "the plaintiff must show that he is a disabled person within the meaning of the law, that he is qualified to perform the essential functions of the job (either with or without reasonable accommodation), and that he has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises." *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 582 n.22 (W. Va. 1996).

It appears to be conceded by Dodson Brothers that Schneider qualifies as a disabled person within the meaning of the WVHRA. Defendant has also failed to rebut claims that Schneider was qualified to perform the essential functions of his job as a sales inspector. What is disputed is whether Schneider suffered an adverse employment action,[3] and whether Schneider has sufficiently shown an inference of unlawful discrimination.

The Court is satisfied that Schneider has shown he suffered an adverse action. Frankly put, a result of the transfer, Schneider makes less money. Schneider Dep. 61–62; Balderson Dep. 88 (agreeing that route technicians generally earn less than sales inspectors); *see, e.g.*, *Ford Motor Credit Co. v. W. Va. Hum. Rights Comm'n*, 696 S.E.2d 282, 293 (W. Va. 2010) (finding plaintiff had presented evidence showing an adverse employment action when was reprimanded and demoted).

---

[3] Dodson Brothers does not argue lack of adverse action in its Motion but notes that it "does not concede Schneider has met his burden of demonstrating he experienced an adverse employment action by being transferred to a route technician position as employees in this position still have the opportunity to make sales and earn commissions." Def.'s Mem. 13 n.7.

Moreover, upon review of both Motions, supporting memoranda of law, and the corresponding responses in opposition,[4] the Court finds that questions of material fact remain regarding whether Schneider has shown an inference of unlawful discrimination. The facts and evidence provided by Schneider, if believed by the jury, support an inference that he was terminated "under circumstances from which an inference of unlawful discrimination arises." *Skaggs*, 479 S. E. 2d. at 582 n.22. According to Schneider, he never received any indication that his job was at risk. Schneider Dep. 64–69,[5] 95–96.[6] He was never given a written performance evaluation, even though Dodson Brothers' Employee Handbook states they are "critical" and that they "influence salaries and wages, promotions and transfers." Employee Handbook 11, ECF No. 25-3.[7] Additionally, less than three weeks before his termination, he received a Pacesetter's award for selling $250,000.00 in products. *Id.* at 79; Def.'s Mem. 5. Finally, most notably, only three days after being released from the hospital for a newly diagnosed medical condition, he was transferred to a position where he earns substantially less income. Balderson Dep. 49. Given the

---

[4] Notably, neither party filed a reply memorandum in support of their respective Motions.

[5]  Q. Okay. Did they ever have conversations with you where they were less positive about your performance?

   A. Nothing that would – no. Just every time we talked even if – when there was a problem, they were still very encouraging and saying they know that I can do it and that they have all the confidence in the world in me, and to keep my head up and don't, you know, lose faith for lack of a better term.

Schneider Dep. 68–69

[6]  Q. Did he say anything at that point about having told you in December that you were under scrutiny for potentially having your sales inspector position evaluated or moved?

   A. Yes. He said, you know, you were under evaluation for December, and you were under evaluation in January. And I replied with, that would have been nice to know. And I also followed up with, you told me that I did a very good job in December. I can't help it that I almost died in January.

Schneider Dep. 95–96.

[7] At the pretrial conference, the Dodson Brothers claimed this Handbook provision did not apply to sales inspectors. Although in its Response to Schneider's Motion for Summary Judgment, Dodson Brothers argued that the Handbook did not *require* managers to conduct written performance evaluations, it never claimed that the Handbook provision was inapplicable because of Schneider's position. In the Court's view, questions of fact remain regarding whether the provision applies to employees working in sales, and if it does, whether the provision requires written evaluations to be performed before a transfer occurs.

foregoing, it would not be unreasonable for the jury to find that Balderson acted intentionally or even that Schneider's illness was the unlawful straw that broke the proverbial camel's back.

Similarly, the facts and evidence as presented by Dodson Brothers, if believed, could lead to a jury finding that the cause of Schneider's demotion was his poor job performance and lack of dedication to improvement. Based on Dodson's facts, the jury could find that Schneider was a sloppy employee who should not have received the Pacesetter's award in the first place.[8] Given his poor performance, and the purported ultimatum from Balderson, a reasonable jury could find that Schneider's decision to take a last-minute vacation spurred, and warranted, a demotion. *See* Balderson Dep. 70, 80–81; Balderson Decl. ¶ 28.

In sum, material questions of fact remain that prohibit the Court from granting summary judgment for either party. Most significantly, the parties dispute the content of Schneider's December 2019 conversations with Balderson. Balderson maintains that he told Schneider he needed to get his numbers up by the end of January to keep his job in sales. Def.'s Mem. 2; Balderson Dep. 70.[9] Schneider, on the other hand, testified that Balderson never gave such an ultimatum. Schneider Dep. 69–72. According to Schneider, Balderson just gave him tips on how to increase his sales. *Id.* The parties characterize Schneider's employment relationship with Balderson and Dodson Brothers differently. Accordingly, no party is entitled to judgment as a matter of law as to liability. Schneider has submitted enough evidence to submit his claim to a jury.

**B. Punitive Damages**

---

[8] Balderson maintains that Schneider should not have received the Pacesetter's award because Schneider did not have qualifying sales numbers for the fiscal year of 2019. Balderson Dep. 80.

[9] "I told him that I was going to evaluate him through the month of December and January because his numbers [had] been drastically declining. And I was going to evaluate him through December and January. And at the end of January I'd make my decision as to whether or not he would still be in the sales position."

The Supreme Court of West Virginia has expressly held that punitive damages are available remedies under the WVHRA. *Haynes v. Rhone-Poulenc, Inc.*, 521 S.E.2d 331, 348 (W. Va. 1999). In order for punitive damages to reach jury consideration, however, the plaintiff in a WVHRA suit needs to show that the defendant acted "maliciously, oppressively, wantonly, willfully, recklessly, or with criminal indifference to civil obligations." *Id.* (quoting *Alkire v. First Nat. Bank of Parsons*, 475 S.E.2d 122, 129 (W. Va. 1996)).

Dodson Brothers maintains that Schneider "failed to adduce any evidence whatsoever that Balderson or any Dodson employee" acted in a sufficiently culpable manner to justify punitive damages. Def.'s Mem. 20. Schneider claims that the question of punitive damages should go to a jury, because the "facts support a jury's reasonable finding that Dodson recklessly and/or intentionally demoted Mr. Schneider immediately after it learned he had diabetes." Pl.'s Resp. 14.

If the jury were to believe Schneider's facts, then Balderson intentionally transferred him to a less profitable job just because he got sick. Considering the facts in the light most reasonable to Schneider, as the non-movant, the Court has no choice but to deny Dodson Brothers' motion for summary judgment on Schneider's claim for punitive damages.

## IV. CONCLUSION

Accordingly, the Court **DENIES** both motions for summary judgment. ECF No. 24; ECF No. 26. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion to counsel of record and any unrepresented parties.

ENTER: March 2, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE